STATE of Missouri, Respondent,

v.

Akbar ESKER, Appellant.

No. WD 34110.

Missouri Court of Appeals,
Western District.

Sept. 6, 1983.

Hale W. Brown and Hale Brown, Jr., Kirkwood, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and DIXON and NUGENT, JJ.

NUGENT, Judge.

Defendant appeals his conviction by a jury of abuse of a child, sec. 568.060 [1], for which he was sentenced to five years imprisonment. Defendant challenges the trial court's use of a jury instruction based on a combination of MAI–CR2d 2.12 and MAI–CR2d 22.12. That instruction, he contends, was used contrary to the relevant notes on use and erroneously permitted the jury to find him guilty without determining whether he was the principal or the agent involved in the offense. We affirm.

Because defendant does not challenge the sufficiency of the evidence on this appeal, we need not review the evidence in detail. The necessary facts are as follows.

The defendant and his co-defendant Olgica Kocevski lived together in a rented house in Cape Girardeau, Missouri, from December, 1981 to April, 1982. Living with them was Ms. Kocevski's seven year old son, Dejan.

Dejan testified that the defendant put him in the basement of the house and that during the four months in question, he was never permitted outside or upstairs. Nor was he permitted to see his mother. He saw only the defendant who brought him food.

Neighbors testified that they had seen the boy only twice—on the day he moved in and on April 13, 1982, when a fire broke out in the house and the boy was carried out by fireman Robert Thompson. Mr. Thompson testified that in response to a call, he entered the basement of the house and found Dejan unconscious in the room with no toys,

1. All sectional references are to Revised Stat-    utes of Missouri, 1978.

books, games, or food other than three cookies and a snack cake. A draw chain and padlock were on the basement door.

Dr. Jesse Ramsey, who treated Dejan for smoke inhalation, hypoxia, hypothermia and shock, testified that the boy was severely malnourished with thin, wasted arms and ribs sticking out through the skin.

At the time of the fire, Ms. Kocevski and the defendant were in Peoria, Illinois, where they had been for several days. On their return, they were both charged with violation of sec. 568.060.

On May 14, 1982, a preliminary hearing on motion for change of venue was held in Cape Girardeau in which Ms. Kocevski testified that defendant had locked her son in the basement and that she was afraid either to let the boy out or to visit him because the defendant had threatened to beat her if she did so. In fact, she related, when he once observed her looking down into the basement at the boy, he did beat her.

On July 27, 1982, Judge Conley heard the testimony of Dr. Jerry Wessel, staff psychiatrist at Fulton State Hospital, and determined that Ms. Kocevski was incompetent to testify at the defendant's trial. The court found her to have been competent at the time of the May 14 hearing, however, and admitted the transcript of that testimony.

At the July 27 pretrial hearing, reference was made by defense counsel to the fact that Ms. Kocevski had been charged with the same offense, that she had pled guilty, but that her plea had not been accepted. In his brief, defense counsel informs us that the plea could not be accepted because the court found that she was incompetent to know the nature of what she was doing.

At trial, defendant testified that he had seen Ms. Kocevski beat the boy with a wooden spoon and a belt, that the boy had been free to come upstairs from the basement but chose not to, that Ms. Kocevski had visited Dejan in the basement and that she had put the lock on the basement door herself because of fear of intruders. He further testified that when he drove Ms. Kocevski to Peoria on Saturday, April 10, he did so at her insistence. He intended only to find her a place to stay overnight while he visited his wife. He fully expected Ms. Kocevski to return to their home in Cape Girardeau by bus the next day. He did not learn for several days that she was, in fact, still in Peoria. This testimony was at least partially contradicted by the manager of the motel where Ms. Kocevski stayed. The manager testified that she saw the defendant at the motel on Sunday, April 11.

Over defendant's objection, the court submitted Instruction No. 5 to the jury as follows:

A person is responsible for his own conduct and he is also responsible for the conduct of another person committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

If you find and believe from the evidence beyond a reasonable doubt:

First, that from January 29, 1982, through April 13, 1982, in the County of Cape Girardeau, State of Missouri, the defendant or Olgica Kocevski inflicted cruel and inhuman punishment upon Dejan Kocevski by locking said Dejan Kocevski alone in the basement apartment of a residence located at 141 South Sunset, Cape Girardeau, Missouri, and failing to provide such child with adequate nutritional care and/or adequate medical and dental care and/or adequate educational care and/or adequate emotional care, and

Second, that Dejan Kocevski was then less than seventeen years old, and

Third, that in engaging in the conducts submitted in this instruction the defendant or Olgica Kocevski acted knowingly, then you are instructed that the offense of abuse of a child has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of abuse of a child, the defendant acted

together with Olgica Kocevski in committing that offense, then you will find the defendant guilty of abuse of a child.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense.

MAI–CR 2.12/22.12 Modified

The jury found defendant guilty of child abuse, set his punishment at five years imprisonment and a fine of $5,000. On August 26, 1982, the trial court sentenced defendant to five years imprisonment.

In challenging the submission of Instruction No. 5 on this appeal, defendant actually raises three points: First, that the defendant was charged by information only with being a principal in the commission of the offense but the instruction inconsistently permitted the jury to find him to be an accessory. Second, that the instruction was used contrary to the MAI–CR2d 2.12 Notes on Use. Third, that the instruction did not require the jury to determine whether he was a principal or an accessory contrary to defendant's right to have all twelve jurors agree on his capacity.

■ Defendant's first point that the instruction allowing the jury to find him to be an accessory was contrary to the information charging him only with being a principal is without merit. The information charges defendant with "either acting alone or knowingly in concert with another" in violation of sec. 568.060. The instruction permits the jury to find the defendant guilty if he or Olgica Kocevski knowingly inflicted cruel and inhuman punishment upon Dejan Kocevski *and* (if the jury found the latter) that the defendant acted together with her in the promoting or furthering of that offense. (See element four of the instruction.) The information and the instruction are not inconsistent.

■ Defendant's second point requires an examination of MAI–CR2d 2.12 on which the first paragraph of the instruction is based. MAI–CR2d 2.12 first appeared in its

present form by order of the Supreme Court dated April 30, 1982, published at 630 S.W.2d xxx. Although the order was effective January 1, 1983, the Supreme Court expressly stated at xxviii that use prior to that date "shall not be presumed to be error." The paragraph is used here in accordance with the Supreme Court's instructions that it should precede the elements of the applicable offense in one combined instruction.

Note on Use 4 explains that the instruction is applicable where the evidence shows that the defendant acted together with another in the commission of an offense, and that it involves imputing the conduct of another person to the defendant. That imputation is restricted, however, in Note 8(a) as follows:

> This format of MAI–CR2d 2.12 covers only those situations where the defendant is to be held responsible for the conduct of another person *and* that other person is also guilty of the offense. This format does NOT apply to situations where the defendant is being held responsible for the conduct of another person and that other person is not guilty of the offense. For example, it does not cover the situation where the other person is not guilty because the other person does not himself have the required culpable mental state for the crime, as can occur when the defendant commits a crime by the use of an "innocent agent." . . . . (Court's original emphasis.)

Defendant contends that Note 8(a) prohibits the use of MAI–CR2d 2.12 when the other person is not guilty because he does not have the required mental state for the crime. He wrongfully presumes that because the court found Olgica Kocevski incompetent to testify at trial, the court also found that she did not have the mental capacity to commit the crime. Olgica Kocevski's mental capacity or incapacity to commit the crime was not decided by the court. The only finding of record by the trial court was that the witness was incompetent to testify at trial. Thus, Note 8(a)'s prohibition on the use of MAI–CR2d 2.12

when the other person does not have the required mental state for the crime is inapplicable to the facts of the case at bar.

Defendant further informs us that ten days prior to trial, the court refused to accept Olgica Kocevski's guilty plea. He avers that this refusal was based on the court's finding that Olgica did not know the nature of what she was doing. Defendant does not tell us, however, whether the court determined Olgica lacked knowledge of what she was doing *at the time the crime was committed*. Nonetheless, he assumes that the court found Olgica Kocevski did not have the mental capacity to commit the crime. Although the record does indicate that defendant's attorney asked the court to take judicial notice of the court's "attempt" to take Olgica Kocevski's guilty plea, the *record shows nothing more*. Because we have no record that she pled guilty nor the reasons for the court's refusal to accept such plea, defendant's argument that Olgica Kocevski did not have the required mental state to commit the crime is without merit.

Defendant also contends that because the guilt of the other person (Olgica Kocevski) involved in the offense was not established by way of a verdict or a guilty plea, use of MAI–CR2d 2.12 was improper. Defendant reasons that Note on Use 8(a) prohibits the use of MAI–CR2d 2.12 in any case where the co-defendant has not been adjudicated guilty. While the applicability of Note 8(a) turns on the definition of "guilty" used therein, defendant's definition is entirely too restrictive. He contends that "[g]uilty does not mean anything but 'guilty' and that means after a verdict was final. . . ." Applying defendant's definition and analysis, use of MAI–CR2d 2.12 would be proper only where the other person had previously been found guilty of the offense. Such a result is clearly impracticable.

Defendant's analysis of Note on Use 8(a) and his definition of "guilty" completely ignore other relevant notes on use. Notes on Use 4 and 6 provide that MAI–CR2d may be used where the defendant, by his own conduct, committed all the elements of the offense, so long as evidence shows that another person was involved in the commission of the offense or aided the defendant.

In the present case, the record contains evidence of Olgica Kocevski's involvement in the crime. The victim, Dejan Kocevski, testified at trial that both Olgica Kocevski and the defendant were at the house, that neither of them would allow him upstairs, and that Olgica told Dejan not to disturb the lock on the basement door. Olgica Kocevski's testimony from the preliminary hearing was read into evidence. Olgica testified that she was present in the house, knew that the boy was being deprived and was locked in the basement. She also testified that she left for Peoria knowing he was alone in the basement. Olgica's statement to a Cape Girardeau police officer *that she had put the lock on the door was* also read into evidence. The defendant also testified that Olgica was the one who locked the basement door. Because the record contains such evidence of Olgica's involvement in the offense, the prohibition of Note on Use 8(a) is inapplicable. Therefore, Instruction No. 5 which contained MAI–CR2d 2.12 was properly given and was not used contrary to the MAI–CR2d 2.12 Notes on Use.

■■ Defendant's third point, that he was deprived of his right to be found guilty by a unanimous verdict because the instruction did not require the jury to determine whether he was a principal or accessory clearly has no merit. Neither of the two cases defendant cites, *State v. Gardner*, 231 S.W. 1057 (Mo.App.1921); *State v. Jackson*, 242 Mo. 410, 146 S.W. 1166 (1912), to support his argument involve accessory liability and thus are inapplicable. The crux of defendant's argument is that a defendant's right to a unanimous guilty verdict requires a jury to define the capacity in which the defendant acted in an accessory liability case. While at common law, distinctions between principals and accessories had both procedural and punishment consequences, these distinctions have largely been obliterated by modern statutes. S. KADISH & M. PAULSEN, CRIMINAL LAW AND ITS

PROCESSES 369 (3d ed. 1975). Missouri's criminal code makes no distinction between principals and accessories because the guilt of the other is imputed to the defendant whether he acted as "principal" or "accessory". *See* sections 562.036 and 562.041.[2]

Thus, defendant's argument that the jury must determine whether he was an accomplice or a principal is of no consequence, and the instruction did not violate defendant's right to a unanimous verdict.

Because the information and Instruction 5 were not inconsistent, the Instruction was not used contrary to the MAI–CR2d 2.12 Notes on Use, and the Instruction did not deprive defendant of his right to a unanimous verdict, we hold that the trial court's giving of Instruction 5 was not in error.

For the foregoing reasons, we affirm the judgment of the trial court.

All concur.

---

**2.** *Compare* sec. 562.051 dealing with criminal responsibility of another where offense is divid-

ed into degrees and sec. 575.030 regarding the concept of accessories after the fact.