State v. Pierce.

---

THE STATE v. PIERCE, *Appellant.*

Division Two, November 20, 1896.

1. Criminal Law: FORGERY: UTTERING FORGED INSTRUMENT: INDICTMENT. An indictment for forging an instrument of writing and for uttering the same, examined and held sufficient.

2. ————: PRACTICE: INSTRUCTIONS. Where the instructions given in a criminal cause correctly and fully declared the law applicable to the facts of the case, it was not error to refuse others asked.

3. ————: ————: FAILURE OF JURY TO AGREE: ORAL STATEMENT BY THE COURT. The oral statement by the court to the jury in a criminal cause, after it had been deliberating for three days without agreeing upon a verdict, that he regretted that they had not reached a verdict; that the case must eventually be determined by a jury; that the object of the jury system was to have the aggregate wisdom of twelve men instead of one; that if they failed to agree the system, that far, was a failure; that he did not wish to be understood as attempting to force an agreement, but hoped they would consult together and conscientiously try to agree, was not objectionable and does not constitute error.

4. ———: ———: VERDICT. The verdict, "we the jury find the defendant guilty, and assess his punishment," etc., in a prosecution on an indictment charging in the first count the forgery of a written · instrument and in the second count the uttering of the same, is insufficient in that it does not show of which of the two offenses defendant was convicted.

*Appeal from Callaway Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*R. F. Walker*, attorney general, for the state.

(1) Defendant's application for continuance was properly overruled because the witnesses alleged to have been absent were present and testified at the trial, and defendant was not prejudiced. The second application for a continuance is not preserved. (2) The indictment charges, *first*, the forging and making by defendant of the order therein described by its tenor, and, *second*, that defendant passed, uttered, and published said false and forged order. It contains all the necessary averments, and is not subject to valid objection. R. S. 1889, secs. 3641 and 3646; *State v. Yerger*, 86 Mo. 33; *State v. Jackson*, 90 Mo. 156; *State v. Gullette*, 121 Mo. 448; *State v. Taylor*, 117 Mo. 181. (3) There was no reversible error committed by the trial court in the admission or exclusion of testimony, and the defendant will not be heard to complain on this account. (4.) The instructions given by the court are in the usual form, properly declare the law under the evidence applicable to cases under sections 3641 and 3646, Revised Statutes, 1889, and are not subject to objection. No instructions claimed to have been asked by defendant and refused by the court are preserved in the record. (5) The remark made by the trial judge to the jury as to their duty to agree, if pos-

sible, could not have prejudiced defendant, and he will, therefore, not be heard to complain. *State v. Pratt,* 121 Mo. 566.

SHERWOOD, J.—The indictment in this case is bottomed on sections 3641 and 3646, Revised Statutes, 1889, and omitting formal parts, is in the following form:

"Unlawfully and feloniously did falsely made and forge a certain instrument in writing, to wit, an order purporting to be the act of one John Wagers, by which a pecuniary demand and obligation for the payment of $15, by the said John Wagers, to one Jesse Maughs, on the delivery by said Maughs to said John W. Pierce of $15 worth of goods, purported to be created, which said false and forged instrument and order is of the tenor following, that is to say:

"'June 22, 1894.

"'*Mr. Jes Mosse:*

"Will you please let the barrer have $15 worth of good, and charge the same to me. You will get your money soon. Make him give you a receet after you sell him the goods. Not over $15.

"'Yours truly,

"'MR. JOHN WAGERS.'

"With intent then and there and thereby unlawfully and feloniously to injure and defraud against the peace and dignity of the state.

"The grand jurors aforesaid, upon their oaths aforesaid, do further present and charge that John W. Pierce, on the thirtieth day of June, 1894, at the said county of Callaway, and state aforesaid, with intent to defraud one Jesse Maughs, did unlawfully, falsely, fraudulently, and feloniously pass, utter, and publish, and did falsely, fraudulently, and feloniously sell, exchange, and deliver, for the consideration of fifteen

dollars worth of clothing and other goods and merchandise, to said Jesse Maughs, as true, a certain falsely made and forged instrument in writing, to wit, an order for fifteen dollars worth of goods, dated June 22, 1894, purporting to be made and issued by one John Wagers; and that the said John W. Pierce, at the said time so sold, exchanged, and delivered the said last mentioned instrument of writing and order, so falsely made and forged as aforesaid, then and there, to wit, on the said thirtieth day of June, A. D. 1894, well knew the same to have been falsely made and forged against the peace and dignity of the state."

On the thirtieth day of July, 1894, John W. Pierce, the defendant, came to the store of Henderson & Company, in Fulton, Missouri, and presented the following order to Jesse Maughs, a member of the firm, for payment:

"June 22, 1894.

"*Mr. Jes Mosse*—Will you please let the barrer have $15 worth of good, and charge the same to me. You will get your money soon.   Make him give you a receet after you sell him the goods.   Not over $15.

"Yours truly,

"MR. JOHN WAGERS."

The defendant was given goods to the amount of $15 upon the order and gave the following receipt as an evidence of same:

"$15.              FULTON, Mo., June 30, 1894.

"Received of Henderson & Co. $15 in merchandise on order of John Wagers.

(Signed)         "HENRY MOORE."

John Wagers, whose name was signed to the order presented by defendant, testified that he never gave defendant or anyone else such an order, and that he never wrote or authorized anyone else to write or execute such an order to anyone; that the name signed

to the order given by defendant to Maughs was not as he usually wrote his name; that he was not indebted to defendant at the time the order purported to have been given; that his first knowledge of the order was when he received it through the mail from Henderson & Maughs. He notified them that he had not made such an order and knew nothing about it.

Defendant testified in his own behalf that he did not write the order offered in evidence, and did not know where Maugh's store was and knew nothing of the occurrence. His father testified that defendant was at home, ten miles from Fulton, on the day the paper was proved to have been presented to Maughs and the goods delivered. A sister of defendant also testified that he was at home on the day he is charged to have presented the forged order to Maughs. Another witness testified that he was with defendant at his father's mill, ten miles from Fulton, on the day when defendant is alleged to have presented the forged order for payment. This witness fixes the time by stating that it was on the day that a negro was hanged by a mob in Callaway county for having outraged a white woman.

It was also shown that the name of "*Maughs*" was frequently pronounced as well as written "*Mosse.*"

The first application of defendant for a continuance was properly overruled, inasmuch as the alleged absent witnesses were present and testified at the trial. As the second application has not been preserved, its merits can not be passed upon.

The indictment is in proper form, as such has been frequently approved by this court. *State v. Yerger*, 86 Mo. 33; *State v. Jackson*, 90 Mo. 156; *State v. Gullette*, 121 Mo. 448; *State v. Taylor*, 117 Mo. 181. It charges the forgery of a certain instrument of writing in the first count, and in the second the *uttering* of such instrument.

On both these counts suitable instructions were given at the instance of the state, and the jury were told that if they found the defendant guilty, they should state in their verdict on which count in the indictment they so find him guilty.

Several instructions were given at request of defendant, and these, with those given on behalf of the state, were all that were necessary to fully inform the jury on all questions of law arising in the case in order to make up their verdict. It is claimed in the motion for a new trial that other instructions asked by defendant were improperly refused. Such instructions have not been preserved in the bill of exceptions, so that we can not tell what they were, but it is immaterial how they were drawn, because those given at the instance of both parties fully covered the law of the case.

The evidence fully maintained the instructions given, and it belonged to the jury to determine the conflicting statements of some of the witnesses. The jury retired to consider of their verdict on the fourteenth day of December, and on the seventeenth of that month, not having agreed upon a verdict, as they stated to the court, the court thus addressed them: "Gentlemen, I regret that you have not reached a verdict. This case must eventually be determined by a jury. The object of the jury system is to have the aggregate wisdom of twelve men instead of one. But if they do not agree, the system, that far, is a failure. Whilst I do not wish to be understood as attempting to force an agreement, I hope you will consult together and try and agree, if you can conscientiously do so, and I will therefore return you to your room to make another effort."

Exceptions were taken by defendant to these remarks. We discover nothing objectionable in them.

It belongs to the court to determine whether and when a jury shall be discharged, and the jury may be briefly told, on such occasions, in a general way, why the court desires further to detain them.

On the same day they returned into court the following verdict:

"We the jury find the defendant guilty and assess his punishment at two years in the penitentiary."

The defendant is not represented in this court, nor was any point made on the insufficiency of the verdict. Nevertheless it is obviously insufficient, and no valid judgment can be rendered upon it, because it is impossible to tell from the verdict on which count the jury found the defendant guilty; and it is obvious from the punishment assessed against him, that they only intended to punish him for one of the distinct and separate offenses charged in the indictment.

"The verdict must be certain, positive, and free from all ambiguity. It must convey on its face a definite and precise meaning, and must show just what the jury intended. An obscurity which renders it at all doubtful, will be fatal to it." 3 Graham & Waterman on N. Trls., p. 1378.

Bishop says on this topic: "*Not Responsive.*—If the verdict does not find the issue presented by the record but some other, or is silent on some element of the offence, no valid judgment can be recorded upon it, and it should be set aside. Or,—

"*Uncertain.*—If the meaning of it is uncertain—as, for example, if it does not show which of two defendants is meant to be convicted, or on which of two counts the conviction is,—the consequence is the same." 1 Bishop, Crim. Proc. [3 Ed.], sec. 1005.

Authorities abound on every hand announcing the same conclusion; indeed it may be said to be elementary law. *State v. Coon*, 18 Minn. 518; *Favor v. State,*

54 Ga. 249; *Day v. People*, 76 Ill. 380; *People ex. rel. v. Whitson*, 74 Ill. 20; *Campbell v. Queen*, 1 Cox C. C. 269; 2 Thompson, Trials, sec. 2640, and cases cited.

This point has thus been ruled in *State v. Harmon*, 106 Mo. 635. To the like effect is *State v. Bedell*, 35 Mo. App. 551.

And in addition to what has already been said as to the embarrassments attendant upon and incident to such insufficient and non-responsive verdicts, it may be remarked that a person convicted on such a verdict would not have it in his power to successfully plead either *auterfois convict* or *auterfois acquit*, or to secure a pardon, because it would be impossible to tell of what he had been convicted.

For this, the only error apparent of record, the judgment must be reversed and the cause remanded in order that defendant may be retried. All concur.